Yes, Your Honor. Good morning, Your Honors. My name is Miriam Schwartz. I represent Dustin Ranger-Crouchet, who is the appellant in this matter. And I reserve about two minutes of time, if I might, for rebuttal. Thank you. Our argument is very straightforward, and, Your Honor, it's our position that the lower court erred in departing upward in Mr. Ranger-Crouchet's case on a criminal history basis. We agree with the government that this Court should review the upward departure on a de novo basis, and that we argue that this Court should remand this matter for resentencing within the guideline range, which, in this case — Excuse me. You do agree with the government that it's a de novo? Yes. Yes. Yes. Makes it easy. And we would ask this Court to reverse and remand for a sentencing within the guideline range. I just want to make two basic arguments. Even if we agreed with you? If you agreed with me, yes. I mean, with instructions that say you have to sentence within the guideline range, not you have to give adequate reasons. Well, that is certainly an option this Court could do, is remand for reasons for the departure. What we would ask the Court to do is to remand for resentencing. Thank you. It's our position, and I think the case law definitely supports this, that a court should not and really cannot depart upward from criminal history Category 6, which is where Mr. Ranger was and is, unless there's a basis to find that that particular defendant's record is significantly more serious than other defendants in criminal history Category 6, which, of course, is the highest criminal history category that the guidelines provide for. And the cases support the position that an upward departure from Category 6 is an extremely rare and extremely unusual departure. And we don't think it was warranted in this case. Maybe there's a semantic problem here. If you're going to depart upwards ever in Category 6, arguably you're going into a nonexistent category. Haven't we looked at these cases over the years as upward departures in terms of the levels rather than the categories? Well, I think there's some case law, specifically the U.S. v. George case, where Category 6 is treated differently than other categories because of the fact that it's the highest category and it encompasses everybody who is the most serious offender who comes in front of a court. So that's been treated differently. Mr. Churchill. Help me sort out. If there is something to be considered about a potential upward departure, how does one approach that in Category 6 as distinguished from the other five categories? I think that the courts have just basically said that it's a stricter standard. It's reviewed with a higher degree of scrutiny because of the fact that if you're going up from Category 6, you're going up from the worst of the worst, as opposed to going up from a category where there is another level or a lower level of criminal history. And ---- that it would be appropriate to depart upward from Category 6 because of prior assaultive behavior that had become increasingly serious. I think that there would be support if there was what they call an escalating pattern of behavior where there are more and more serious assaultive kinds of crimes that suggest that this person is going to get more and more and more serious. But I don't think that's the case here. The assaultive behavior in this particular case was all at the misdemeanor level and was all relatively older, older crimes. The behavior that he was in front of the court for in this case was a very garden variety type of felon in possession case. It was not any kind of violent behavior. And there was nothing to suggest that there was an escalating pattern of more and more serious assaults. There's only one or two cases, specifically the Strike case, which I think the government cited, I don't believe we cited, where there was a criminal history departure from Category 6 that was upheld. And that case involved nine major criminal episodes of armed robbery, first of all, second of all, third of all, and fourth of all. And if you look at Mr. Ranger's record, what strikes you about it is it's long, it's repetitive, but it's relatively low level. It's not the category that takes him worse than armed career criminals, worse than career offenders, worse than murderers and rapists who appear in Category 6. It's relatively low level and repetitive behavior of your drug addict property offender. Sotomayor, if it were factually supported, would it be okay to depart upward from Category 6 because prior violent assaultive behavior had been put down, the misdemeanor level? I think that, again, I don't think there's a case right on that, but I think, again, if there were evidence that there was violent and assaultive behavior which had persisted and escalated, no matter what it had, if it had been, if it were factually supported, that might be a grounds, if the Court could find that it was of an egregious nature that was escalating and out of control. So your main disagreement with what the district court did here is that there simply is no factual predicate upon which to base this particular upward departure. Well, our position is we're not saying that there could never be an upward departure from Category 6 based on criminal history. You agreed with me that it is possible to apply an upward departure based upon prior violent assaultive behavior, both when the assault is extremely serious and when the convictions or when the pleas have been pled down. I think you'd have to find that this assaultive behavior is so serious and so violent and so repetitive that it is worse, significantly worse. So you're not disagreeing that those factors might just, might in the right case justify an upward departure from Category 6. What you are saying is that in this case, the record didn't justify it. Is that what you're arguing? In this case, the record does not justify an upward departure. It does not rise to the level of the egregious, serious criminal record that makes Mr. Ranger Crochet worse than others in Category 6. I would also make a point, Your Honor, that this Court invited, and that is there is no evidence of assaultive behavior that was pled down from felony-level assaultive conduct in this particular case. There were no prior felony-level assault charges that were pled down. All of the assault charges in Mr. Ranger's history were misdemeanor-level assaults. So I would ask to reserve the remainder of my time. Thank you, Your Honor. You may do so, counsel. We'll hear from the government. May it please the Court. My name is John Legend, and I represent the United States of America. Your Honor, this is the right case for an upward departure. Ms. Schwartz has got it right. There are cases in which it is appropriate to depart upward. And the guidelines contemplate that. And this Court, in a number of cases cited by the government, cases such as Segura del Rey, Singleton, Durham, talk about the criteria used for that. One of them is what Her Honor pointed out, whether or not there is escalating criminal conduct. The other aspect of it is whether or not prior incarcerations have made any difference at all. In this case, the factual record clearly supports that both of those factors are present. Let me ask you a question. Is it factually true or not true that any of his prior convictions were felonies that were pled down? The judge found that. We couldn't find it in the record. I don't know what the judge found. That wasn't my question. The question is, is it factually true or untrue? Fairness to Your Honors, we don't know. I looked through the State court records that I had in my possession yesterday and I could not find that they were busted down. All right. So if that's the case, then it cannot be said that one of the grounds upon which the judge made an upward departure is justified. The judge was erroneous on that. It may not be, but you can't say that it is. You're right. The judge was erroneous on that point. That being so, then we don't know the extent to which his departure was influenced by that factor compared with the other two that he relied upon. So why shouldn't we remand and have him revisit it without consideration of the effort of the pled down issue? I would say for two reasons. One, one looks at the colloquy the judge set forth. He laid out a number of reasons before saying that they were pled down. He talked about a trend toward violence toward women. He talked about an assault of nature. He had all three of them in there. Yes, he did. But we don't know the weight that he put to any one of the three. No, we don't know that. But under the new standard of de novo review, that review suggests that this Court can take a look at it fresh to see that. It's irrelevant whether or not they were broken down. Are you suggesting we could affirm if we felt that there was enough of a showing with respect to the violence against women alone, let's say? Yes. If you found that there was escalating criminal conduct that would go to that, this  So you're saying that they just put us in the business of making sentencing decisions? Is that what they really mean when they say we've got de novo review? I can't imagine that. Well, Your Honor, I'm not quite sure. I've only seen de novo review in the sense of looking at law under the statute and then the other. For me to go paw around with the PSR and say, oh, I just see another ground for upper departure, so given de novo review, I think we should just affirm for that reason. It's not clear from the case law right now, Your Honor. I'm just asking you how to flesh it out for me, because this doesn't make sense. You just gave us these two cases, Phillips and Daychild. Is there anything in these cases that can help us figure this out? Those cases were offered for the support that de novo review is appropriate in these types of enhancement and departure cases. No, we don't. Within those cases, I'm sorry, within those cases, Your Honor, I saw nothing that suggested that the Court should be in the business of going through that. But I'm not quite sure what, if de novo review is not intended for this Court, what it should do. Does it simply say send it back, or does it mean take a look at the facts fresh as it would if this was a legal issue? And, counsel, are you also willing to tell the Court that if we are perfectly capable of reviewing at de novo and departing upward, that we are also perfectly capable of reviewing at de novo and giving a downward departure? Are you comfortable with the appellate court taking on that role? I pause for a moment as I think about the ramifications across the Ninth Circuit based on what I'm about to say. I just want you to be consistent, counsel. I think if that's the argument. Leading the country as well while we're at it, huh? I hope to make myself a names in AUSA, but not in this sense, Your Honors. I think it would stand to reason that if the PROTECT Act really does want the Court to look at de novo review, and de novo review is now going to factual issues, and those factual issues would go toward going upward, that the converse must be true, that if the de novo review says, no, the facts aren't there, that the Court can make that finding. I'm not sure of any other way to interpret de novo review. What we would argue is that if the Court looked at this case as a whole, you would see that. There are a lot of low-level misdemeanors. There are a lot of traffic offenses in there. But there is clearly a long pattern going back to 1992 of violence against women, starting with him punching his mother, threats, and as you go through the years, and we've outlined those, the sites in the PSR, pages 13 and 18 of this Court, but you see an escalation going to the point in 2000, when he chokes a woman, hits her, sits on her, and then turns around and threatens a seven-month-old child. In addition to the violence against women, we see a trend toward eluding the police and eluding violence. We see convictions in recent years, 97, eluding the police, in which he drives 80 miles an hour through a 35-mile zone, often going against traffic. We see a delivery of a pistol, a firearm, which is something that the judge certainly was concerned about. Aren't all of those matters accounted for in the points that he received to get him to Category 6? They are, but this is an individual who would have 46 points. They get him up to Category 6, but the question then, does it just stop? The government's position would be no, because the guidelines provided some sort of a mechanism to adjust for somebody who was way over those points. The other thing to look at is not only just, but I don't want to emphasize that you should look at the points per se, because this Court's been very clear that points don't matter. What you need to do is look at the quality of the criminal conduct, not the convictions, the quality of the criminal conduct. And when you look at that quality, you see that trend. The one thing I've not heard from the defense, both at sentencing and this morning, is the issue of recidivism. If you look at what the defendant said at the sentencing, it's very evident that he hasn't learned from his prior incarcerations. At pages 28 and 29 of the excerpt of record, he very clearly says, after the judge questions him about him wanting to change his life, he said, how many times have you said that, sir? It's very important what Mr. Ranger Crochet says. I have said it numerous times, and it has been the truth every time. It has been the truth every time. I don't like the way I live. I don't like what I do when I'm out there. I just do it. It's out of habit. It's out of me being comfortable being that way. That suggests, and I think the judge found that, that this is a man who is going to go back and do this again. He's not learning from it in both factors of the test to see whether or not he should be somebody who can depart upward on Category 6 through there. One of the issues that ---- I think through the PSR, this is an impressive list of, again, of each one considered on its own fairly small crimes. We don't have armed robbery. We don't have rape. We have lots of domestic violence. We have lots of DUIs and things like that, driving violations. In most of these cases, it looks like the State courts are suspending the sentence. He's serving, you know, 100 days out of a 300-day sentence. He's serving 10 days out of a 70-day sentence. Are you unhappy that the State hasn't demanded more of him? I can't comment on what the State did. I think, however, that something that the court can certainly consider on whether or not that's what the judge was talking about when things being busted down to lower-level misdemeanors. I'm not quite clear. What I would say, however, is if we had a situation in which we saw high-level felonies, armed robbery, rape, sex offenses, what would happen then is Mr. Ranger would be in a very different category. What he would do is he qualifies a career offender. And if he was a career offender, and I scored this out last night just to see what it would turn out to be, if he was a career offender, he'd be at a level 24, just based on the firearms, which would be 100 to 125 months. With three points of acceptance, he'd be down to a level 21, which would be 77 to 96 months. Now, 77 is a low end. It's very close to what the probation office recommended. The government felt that because of the nature of the types of crimes, because he wasn't committing armed robbery, he wasn't committing rape, he was committing serious offenses against women, that some sort of an upward departure was appropriate. We tried to strike a balance. We tried to find something that would reflect that but not bring him up to the category in which an armed career criminal or a career offender would be.  So all things being balanced is a reasonable sentence and a reasonable upward departure for somebody who, quite frankly, has a very long history of violence toward women, someone who's moving toward firearms, and as the judge pointed out, somebody who may be in a situation where somebody is going to get killed shortly. That's one of the things the judge was concerned about when he sentenced Mr. Ranger Crochet. There's a position, Your Honor, that if the court looks at the record as a whole and you will see an escalating trend of violence, you will see that the defendant is not learning from prior incarcerations, and that the factors set forth by this court in the case decided in the government's briefer met, and therefore respectfully request the court to affirm the district court's conviction of a three-level upward departure. Thank you. Thank you, counsel. We'll now hear from Ms. Schwartz. Thank you, Your Honors. I'll be brief. As I listen to Mr. LaLegend, I feel like we're at a sentencing where I'm arguing or it's being said that I'm arguing for probation and he's arguing for jail time. I'm not saying he should have gotten probation. I'm not saying I'm going to take him to dinner. But I can't say it enough times. This is Category 6. Category 6 is the worst of the worst. Category 6 is everybody who's not only repeated bad conduct many, many times in their history, but has committed the worst kinds of crimes that the law allows for. He was given an upward departure above that group of people. Basically, a finding that he gets an upward departure from Category 6 says he's worse than others in Category 6, and I can't stress enough that. Are you saying that the trial judge could not depart at all in this situation or that he departed too far? No, I'm saying he should not have departed at all by a long shot. This doesn't even get close to saying that it's justified to say that he is worse than other offenders in the category which is the highest criminal history category. If he's not persuaded by that argument, how do we review what he actually did? He gave three reasons, one of which is, let's say, for the sake of argument, not appropriate or compelling. There are still two others, the violence against women and so forth. How do we deal with that? Well, saying that there's a history of violence against women does not make him different and set him apart from other offenders in Category 6. Saying that he's committed some violent crimes does not set him apart. Category 6 is full of offenders who have committed violent crimes against women and other people and have committed domestic violence type of crimes. So it's not to say he's a good guy or a bad guy. It's to say that he's not worse than the worst who are in that category. I think we just have to – the courts have just been very leery of allowing departures above Category 6, only for the very worst. And he's not in that vicinity, Your Honor. So I would – Thank you. Thank you. Thank you, Your Honor. The case just argued is submitted for decision. And we will now hear argument in Tresource Industries v. Didway, here at Wood Products.
judges: O'scannlain, Rymer, Bybee